# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHRISTOPHER JONES** | * | **CIVIL ACTION NO.** |
| | * | **2:22-cv-05097** |
| *Plaintiff* | * | |
| | * | **SECTION M, DIVISION 1** |
| **VERSUS** | * | |
| | * | **JUDGE** |
| **JASON WILLIAMS in his official** | * | **BARRY W. ASHE** |
| **Capacity as District Attorney for** | * | |
| **Orleans Parish, and ABC INSURANCE** | * | **MAGISTRATE JUDGE** |
| **COMPANIES, 1-10** | * | **JANIS VAN MEERVELD** |
| *Defendants* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

NOW INTO COURT, through undersigned counsel, comes Plaintiff, CHRISTOPHER JONES, who files this Memorandum in Opposition to the Motion to Dismiss for Failure to State a Claim filed by Defendant, JASON WILLIAMS in his official capacity as District Attorney for Orleans Parish, and respectfully submits as follows:

## I.      FACTUAL BACKGROUND

The instant matter arises out of the wrongful prosecution and conviction of Christopher Jones ("Mr. Jones" or "Jones" or "Plaintiff") for a crime he did not commit. Mr. Jones was charged by the Orleans Parish District Attorney in 1999 with seven counts of armed robbery in connection with a string of three robbery incidents that all took place on August 10, 1999. Ultimately, Mr. Jones was tried on six counts and found guilty on four of the six. After being found guilty on four counts of armed robbery, Mr. Jones was sentenced by the trial court to two hundred and twenty-eight (228) years in prison.

1

The Orleans Parish District Attorney's Office's ("OPDA") theory of the case at trial centered on the ability of the perpetrator to accomplish all three robberies in a matter of minutes. However, OPDA was in possession of a statement from one of the robbery victims stating that he had seen Mr. Jones "for like ten minutes" before the final incident, a statement which rendered Mr. Jones's presence at the other two robberies impossible. This exculpatory evidence undercut OPDA's principal theory that Mr. Jones committed all the charged offenses.

Despite possession of this evidence, which would have shown that the State's theory was demonstrably impossible, OPDA suppressed exculpatory and/or favorable information and falsely mislead the jury, all in violation of OPDA's obligations under *Brady v. Maryland*[1] and its progeny. As a result of OPDA's actions, Mr. Jones was wrongfully convicted and served over twenty-two (22) years in prison.

In 2021, OPDA acknowledged OPDA's violation of Mr. Jones's constitutional rights by wrongfully withholding an "exculpatory statement made by a key victim-eyewitness" in violation of *Brady*. After being incarcerated for over twenty-two (22) years for crimes he did not commit, Mr. Jones was released from prison on December 9, 2021.

Mr. Jones filed his complaint on December 7, 2022. On March 17, 2023, Defendant JASON WILLIAMS in his official capacity as District Attorney for Orleans Parish ("Defendant") filed a Motion to Dismiss for Failure to State a Claim. This is Defendant's fourth known attempt at the subject motion,[2] and each motion, including the instant one brought by Defendant, centers

---

[1] 373 U.S. 83 (1963).
[2] *See* Notice of Collateral Proceedings at R. Doc. 11.

around one question: Did OPDA act on behalf of the State of Louisiana or on behalf of Orleans Parish when failing to disclose favorable, material evidence as part of an OPDA policy?[3]

Defendant's position is that it cannot be held liable for OPDA's actions because the district attorney acted on behalf of or as an arm of the State of Louisiana when creating policies regarding evidence suppression. For the reasons outlined below, Defendant's analysis of relevant case law is incorrect and the Motion to Dismiss for Failure to State a Claim should be denied.

## II.   LAW AND ARGUMENT

Federal Rule of Civil Procedure 12(b)(6), which forms the basis of the instant motion, provides an avenue for dismissal of a lawsuit based on a plaintiff's failure to state a claim for which relief can be granted. Dismissal of a suit under Rule 12(b)(6) is "viewed with disfavor and rarely granted."[4] Under the relevant standard, "[a] court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff."[5] Courts generally limit their analysis under Rule 12(b)(6) to the face of the complaint.[6] A plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[7] A claim is plausible on its face when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the

---

[3] While the trial court's ruling in the matter of *Kuantay Reeder v. Jason Williams, et al* is still outstanding, the trial court in *JD Floyd v. John Dillmann, et al* and in *Kaliegh Smith v. Jason Williams, et al*, have correctly denied the pending motion, as will be outlined in greater detail below.
[4] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[5] *Advoc. Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.*, 731 F. Supp. 2d 583, 589 (E.D. La. 2010)(internal citations omitted).
[6] *Id*. at 588.
[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).
[8] *Id*.

proper remedy is usually to allow the plaintiff to amend the complaint in order to cure any deficiencies, rather than to dismiss the plaintiff's lawsuit with prejudice.[9]

As outlined above, Defendant's sole argument that forms the basis of the Motion to Dismiss for Failure to State a Claim is that the district attorney acted as an arm of the state, not an arm of the local government entity, in creating and carrying out the policies at issue in this case related to suppression of evidence in Mr. Jones' criminal prosecution. In other words, Defendant asserts that all of OPDA's actions sued upon arose from a state function of prosecuting state crimes in Louisiana state court.[10] For purposes of this motion, this Honorable Court should draw the reasonable inference that the Defendant violated Mr. Jones' constitutional rights as plead and is liable for the harm alleged.

For the reasons that follow, Defendant may be held liable as a local entity for actions brought under 42 U.S.C. 1983 as it relates to application of an office-wide policy resulting in the suppression of favorable material evidence in violation of Plaintiff's rights and OPDA's obligations under *Brady v. Maryland, supra.*

### A. Controlling law on this point was articulated by the Supreme Court of the United States case *McMillian v. Monroe County.*

Under *Monell v. Dep't of Soc. Servs. of City of New York*, a local government is liable under 42 U.S.C. 1983 for its policies that cause constitutional torts.[11]

> These policies may be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy. A court's task is to identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.[12]

---

[9] *Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prod., Inc.*, 410 F. App'x 738, 740 (5th Cir. 2010) (finding that the district court erred in denying the plaintiff's motion to amend complaint on a Rule 12(b)(6) motion to dismiss).

[10] *See* R. Doc. 9-1 at p. 11.

[11] 436 U.S. 658, 694 (1978).

[12] *McMillan v. Monroe Cnty., Ala.*, 520 U.S. 781, 784-85 (1997) (citing *Monell*, 436 U.S. at 694) (internal quotations omitted).

For purposes of this motion, it is not disputed that final policy making authority as it relates to OPDA's policies relating to disclosure of evidence in prosecutions is the district attorney, Jason Williams (Defendant herein). The dispute in the instant matter is: Is Defendant the policymaker for the State of Louisiana or for the Parish of Orleans when it acted to create the policy of suppression of favorable material evidence?

Contrary to Defendant's assertions, a side-by-side comparison of Louisiana and Texas' constitutions, statutes, and jurisprudence does not answer the question whether the district attorney was acting as an arm of the state when it enacted a local inter-office policy of suppression of evidence. To properly analyze this question, we look to the question addressed by the United States Supreme Court in *McMillian v. Monroe County* and the factors taken into account in consideration thereof: whether Alabama's sheriffs were policymakers for the state of Alabama or policymakers for the county when they acted in a law enforcement capacity.[13] In acknowledging that the inquiry is dependent on an analysis of state law, the Supreme Court noted that its "understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."[14]

The Supreme Court first looked to the Alabama Constitution, followed by Alabama case law and Alabama statutes in finding that there was a legislative intent that Alabama's sheriffs be defined as state officials when performing the state function of law enforcement.[15] Various factors considered by the Supreme Court included: (1) the historical development of the constitutional provisions concerning sheriffs and the framers of the Constitution's "intent to ensure that sheriffs be considered executive officers of the state;" (2) the designation of the sheriff as a state officer;

---

[13] *Id*. at 785.
[14] *Id*. at 786.
[15] *Id*. at 786-91.

(3) whether tort claims against a sheriff are considered suits against the state; (4) the sheriff's duties as it relates to orders from state-level officers across the state; (5) the sheriff's authority to enforce state law in their counties; and (6) the county's ability to exercise direct control over the sheriff's fulfillment of his law enforcement duties, as well as limit control over the sheriff's funds for operations.[16]

Analyzing these considerations under Alabama's laws and legislative history, the Supreme Court found that an Alabama county sheriff acted, at times, as an arm of the state. Here, applying these factors to OPDA leads to the opposite conclusion. The following points, analyzed using the same framework as *McMillian*, all lead to the conclusion that OPDA is <u>not</u> an arm of the state, and as such, is not subject to dismissal from the instant suit.

      **1.  Historical development of the constitution, the framers' intent as it relates to Louisiana district attorneys, and designation of the district attorney as a state officer.**

As it relates to the development of the constitution and the manner in which the Louisiana legislature has historically designated the district attorney, an examination of the Louisiana Constitution enacted on July 31, 1852 reveals that Louisiana was divided into four judicial districts[17] after Louisiana began electing district attorneys that same year.[18] The Constitution provided for an office of Attorney General and four district attorneys but did not give the Attorney General any authority over the district attorneys, who were elected only by voters in their district.[19] Further, the Constitution provided that "district or parish" officers were required to reside "within their district or parishes, and shall keep their offices at such places there as may be required by

---

[16] *Id*. at 787-91.
[17] La. Const. of 1852, Title IV, Article 4.
[18] Michael J. Ellis, *The Origins of the Elected Prosecutor*, 121 Yale L.J. 1528, 1566 (2012), citing La. Const. of 1852, Title IV, Article 83.
[19] La. Const. of 1852, Title IV, Article 83.

law."[20] This distinguished them from "civil officers for the State at large," who were merely required to reside within the State. The Louisiana Constitution's clear intention was to treat district attorneys as local officials, not agents of the State, from its inception.[21] This remains true to this day.

A look at the current Louisiana Constitution further supports the Louisiana legislature's intent that OPDA does not act as an arm of the state. Louisiana Constitution Article VI, Section 5 and Section 7, designates district attorneys as "parish officials" when discussing local governmental subdivisions. Further, the Article V, Section 26 powers granted to the district attorney confine the district attorney's powers which are granted to him as a representative of the state to his district. This section simply describes the responsibilities of district attorneys, it does not serve to vest them with state power.

Contrary to *McMillian*, in which the Supreme Court expressly found that the Alabama Constitution explicitly vested the state power in the county sheriffs,[22] the Louisiana Constitution does not impart such power on local district attorney's offices, and Defendant's characterization of Article V, Section 26 as vesting district attorneys with state power of the judicial branch is directly contradicted by the text of Article 5. The text of Article 5, Section 1 of the Louisiana Constitution expressly states, "The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." Nowhere in Article 5 of the Louisiana Constitution is any such power vested in the district attorneys of the state. Nor are district attorneys vested with powers in any of the other branches of Louisiana government.[23] That district attorneys

---

[20] La. Const. of 1852, Title IV, Article 96.
[21] *See also* Michael J. Ellis, *The Origins of the Elected Prosecutor*, 121 Yale L.J. 1528 at 1558 ("Electing prosecutors…allowed communities to maintain control over the functions of local government.") (Emphasis added).
[22] 520 U.S. at 787.
[23] *See* La. Const. art. 2 § 1; art. 3 § 1(A); art. 4.

were left out of these lists is significant, as "[t]he settled doctrine of statutory construction *Expressio Unius est Exclusio Alterius* dictates that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional."[24] Thus, in application of this principle, the only conclusion that can be properly reached is that Article 5 does not vest judicial power in district attorneys.

Likewise, a review of Louisiana case law also demonstrates that Louisiana courts do not consider OPDA to act as an arm of the state, even when prosecuting state crimes. Specifically, *Burge v. Parish of St. Tammany*[25] and *Hudson v. City of New Orleans*,[26] which cases are outlined in greater detail below, both stand for the proposition that Louisiana district attorneys act for the municipality, not the State of Louisiana. Louisiana state case law also falls in line with the federal Fifth Circuit holdings. For example, in *Gibson v. State*, the Louisiana Supreme Court held, "The District Attorney's Office is not the State and the State is not liable for the acts of the District Attorney or his employees."[27] The Fifth Circuit also assessed the Louisiana Supreme Court's statement in *Diaz v. Allstate*[28] – that a district attorney's office is "not subject to local control" – as problematic, noting that "the Louisiana Supreme Court produced a fractured decision without a majority rationale."[29]

For the foregoing reasons, the historical development of the Louisiana Constitution, the legislative intent related to the state Constitution and relevant statutes, and the development of

---

[24] *Jackson v. City of New Orleans*, 144 So. 3d 876, 888 (La. 2014) (internal citations omitted).
[25] 187 F. 3d 452, 470 (5th Cir. 1999).
[26] 174 F. 3d 677, 691 (5th Cir. 1999).
[27] 644 So. 2d 1148, 1150 (La. App. 4 Cir. 1994), *citing* La. R.S. § 42:1441(A).
[28] 433 So. 2d 699 (La. 1983).
[29] *Burge*, 187 F.3d at 470 (5th Cir. 1999).

Louisiana case law on this issue all clearly establish that that a Louisiana district attorney is a local official that never acts as an arm of the state. Thus, Defendant's arguments in this regard fail.

### 2.   Whether tort claims against a Louisiana district attorney are considered suits against the state.

As it relates to the manner in which tort claims against the official at issue are treated, in Louisiana, tort claims against a district attorney are not considered suits against the State of Louisiana. For example, La. R.S. 42:1441 states, "The state of Louisiana shall not be liable for any damage caused by a district attorney…within the course and scope of his official duties." Further, La. R.S. 42:1441.2(A), which is entitled "Nonimposition of master-servant liability on state by Civil Code Article 2320 and other laws for torts of **parish officials**; insurance coverage; interlocal risk management programs," states:

> "Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi offenses of his servant shall not extend or apply to and shall not impose liability upon the state for the offenses and quasi offenses of any of those public officers named in **Article V, Section[] 26**…of the Constitution of Louisiana or any of their officers, deputies, assistants, employees, appointees, designees, or representatives."

(Emphasis added). Article V, Section 26 of the Louisiana Constitution covers district attorneys. In other words, **these statutes specifically clarify that district attorneys are parish officials that the state is not vicariously liable for**.

Additionally, La. R.S. 13:5108.1, La. R.S. 42:1441.1 and La. R.S. 13:5108.2, which lists covered individuals for whom the State can be held liable when they commit a tort in the course of scope of the worker's employment with the State, does not include district attorneys in any of the lists. Not only does Defendant ignore these statutes, he also cites to abrogated case law, namely, *Diaz v. Allstate*.[30] In enacting and amending these statutes, the Louisiana legislature overruled

---

[30] 433 So. 2d 699 (La. 1983).

*Diaz* and established that, as a matter of law, "[t]he District Attorney's Office is not the State and the State is not liable for the acts of the District Attorney or his employees."[31]

A proper analysis of these statutes necessitates a different conclusion than that reached in *McMillian*. In *McMillian*, the Supreme Court found that in Alabama, "tort claims brought against sheriffs based on their official acts…constitute suits against the State, not suits against the sheriff's county," which it found was "strong evidence" that sheriffs act, at times, on behalf of the state, not the county.[32] Unlike Alabama law, Louisiana law, as outlined above, expressly provides that the state is not liable for any acts of district attorneys, no matter the function served by the act.

    **3.** **A Louisiana district attorney's duty as it relates to orders from state-level officers across the state, as well as the parish's ability to exercise direct control over the district attorney's fulfillment of his duties and control over his operational funds.**

Finally, in examining the amount of state-level control versus parish control over the district attorney's office in the State of Louisiana, Louisiana district attorneys are properly considered independent local officials. Specifically, Louisiana district attorneys do not take orders from state-level officers across the state and are not subject to the control of any state-level officers. Rather, Louisiana district attorneys have complete autonomy in performing their duties. In *State v. Collins*,[33] the Louisiana Supreme Court held, "It is within the exclusive province of the district attorney, who is vested with the full charge and control of every criminal prosecution instituted or pending in any parish where he is district attorney, to determine whom, when and how he shall prosecute." Further, in *State v. Perez*,[34] the Louisiana Supreme Court added, "The district attorney is given absolute discretion in the institution of criminal charges…there is no provision of law that

---

[31] *Gibson v. State*, 644 So. 2d 1148, 1150 (La. App. 4 Cir. 1994), *citing* La. R.S. § 42:1441(A).
[32] 520 U.S. at 790-91.
[33] 138 So. 2d 546, 550 (La. 1962).
[34] 464 So. 2d 737, 744 (La. 1985).

defines or limits the type of cases a district attorney may prosecute…" *Burge* noted that a Louisiana district attorney is a "virtually autonomous local government official."[35]

Louisiana's Constitution further supports that the office of district attorney in Louisiana is an autonomous, local government position, as Louisiana district attorneys are given charge of every criminal prosecution in their district.[36] The Louisiana revised statutes support such a conclusion: district attorneys have sole control and discretion over (1) what evidence to present to the grand jury;[37] (2) whether to prosecute regardless of the grand jury's determination;[38] (3) what charges to bring;[39] and (4) whether to dismiss an indictment or any count therein.[40]

To the extent that any department can exert control over the operations and actions of the district attorney, Orleans Parish has the power to do so, **not the State of Louisiana**. This is true as it relates to office policy, including the evidence disclosure policy at issue in this litigation. For example, Defendant Williams recently decided that his office would not prosecute the state crime of abortion in the Parish of Orleans,[41] a policy which corresponded to the wishes of New Orleans' City Counsel.[42] Attorney General Jeff Landry strongly objected to this decision, but he had no power to change OPDA policy. This complete lack of control by the state demonstrates that it is the local parish, not the state, who can exert control over the policies of OPDA, despite Defendant's claims to the contrary.[43]

---

[35] *Burge*, 187 F. 3d at 470.

[36] La. Const. art. 5 § 26.

[37] La. Code Crim. Proc. art. 442.

[38] La. Code Crim. Proc. art. 384.

[39] *See* La. R.S. 14:4; La. R.S. 16:1(C)

[40] La. Code Crim. Proc. art. 691.

[41] Fair and Just Prosecution, Joint Statement from Elected Prosecutors (June 24, 2022), https://fairandjustprosecution.org/wp-content/uploads/2022/06/FJP-Post-Dobbs-Abortion-Joint-Statement.pdf.

[42] Jeff Adelson, *New Orleans City Counsel asks agencies not to use city money to prosecute abortions*, Times Pic., July 7, 2022, https://www.nola.com/news/politics/new-orleans-city-council-asks-agencies-not-to-use-city-money-to-prosecute-abortions/article_81efaae6-fe47-11ec-88b4-5b8fdf3ba805.html.

[43] *See* R. Doc. 9-1 at p. 13, where Defendant suggests that the state has some level of control over district attorneys' actions because the Attorney General can supersede representation in a civil or criminal matter, but the Attorney General can **only** intervene to replace a district attorney on a case *if* the Attorney General can **establish cause and**

As it relates to control over the district attorney's office that can be exercised by sources of funding, the State of Louisiana is legislatively restricted in the control it can exercise over the district attorney's funds. Specifically, the state cannot reduce the district attorney's salary and benefits during his term in office,[44] evidencing an inability on the part of the state to use budget contributions to control district attorneys. On the other hand, the district attorney's budget is proposed by the New Orleans Mayor and "must be approved by the City Counsel of New Orleans" annually.[45] This indicates that the City of New Orleans is well-equipped to – and does – adjust its substantial budget contributions made to the OPDA's office[46] yearly in order to exert immediate influence on the district attorney's practices or policies. Meanwhile, the State of Louisiana lacks any such authority or influence.

A relatively recent example of the City of New Orleans exerting direct influence over OPDA's budget in response to OPDA's policies with which it was displeased was in 2017 when it came to light that OPDA office policy under District Attorney Leon Cannizzaro permitted the

---

**obtain authorization from the court.** In any event, this level of control pales in comparison to the municipalities ability to cut OPDA's budget in any given year.

[44] La. Const. Art. 5 § 31 ("Reduction of Salaries and Benefits Prohibited – Section 31: The salary and retirement benefits of an attorney general, district attorney, sheriff, coroner, or clerk of the district court shall not be diminished during his term of office.").

[45] Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 27,
https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf.

[46] The primary source of funding for the Orleans Parish District Attorney's office is from Orleans Parish, not the State of Louisiana, which contributions from the city nearly double those of the state historically. For example, during 2014 and 2013, "the District Attorney ha[d] recognized $6,271,671 and $6,271,671...respectively, for appropriations from the City of New Orleans," while during that same time period, "the District Attorney ha[d] recognized $3,750,730 and $3,740,335, respectively, from the State for On-Behalf Payments." *See* Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 27,
https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf. Likewise, in 2020, the District Attorney recognized $7,178,029 in appropriations from the City of New Orleans, while during that same time period, the District Attorney recognized $4,077,736 from the State for On-Behalf Payments." *See* Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2020, October 29, 2021, at 47 (*see also* at 18),
https://app.lla.la.gov/publicreports.nsf/0/637e6ff889cffe35862587880070e359/$file/00024f16.pdf.

use of fake subpoenas to compel witness to appear in court and testify.[47] The New Orleans City Counsel took direct action and cut the OPDA's budget, which, in turn, caused the OPDA to cease the practice.[48] This evidences the ability of the local municipality to use its budgeting powers to exert control over the policies of OPDA via operating funds.

A final but equally important example of the lack of control that the State of Louisiana possesses over OPDA is found in its lack of power to remove the district attorney. It is the voters of Orleans Parish who retain the "absolute right" to recall the district attorney of the parish,[49] not the State of Louisiana.[50]

Application of the *McMillian* factors leads to the necessary conclusion that Louisiana district attorneys enjoy virtually unhindered autonomy from state control in performance of their official duties. In *McMillian*, the Supreme Court, in analyzing this prong, found that the state, via the Texas legislature, had the power to exert ultimate control over the sheriffs because the state set the sheriff's salaries, the county was restricted from denying the sheriff operating funds below a reasonable amount, and the governor had the power to remove the sheriff, while the county officials were given no such power.[51] In Louisiana, the opposite is true as it applies to each of these considerations, as outlined above.

---

[47] "The day The Lens reported on the [improper subpoena] practice, Cannizzaro's office announced it would stop....Part of this year's budget cut was a check on Cannizzaro's practices." Charles Maldanado, *Cannizzaro receives lashing from city counsel for fake subpoenas, jailing witnesses and other hardball tactics*, THE LENS, Sep. 20, 2017, https://thelensnola.org/2017/09/20/cannizzaro-receives-lashing-from-city-counsel-for-fake-subpoenas-jailing-witnesses-and-other-hardball-tactics/.

[48] *Id.*

[49] *Ponds v. Treen*, 407 So. 2d 671, 672 (La. 1981) ("[T]he right to recall a public official under LSA-R.S. 18:1300.1, et seq., does not turn on malfeasance, regardless of the term of office. **The electorate has an absolute right to recall public officers for any reason or no reason.**") (emphasis added).

[50] La. Const. art. 5 § 26.

[51] 520 U.S. at 791.

**B.  The Fifth Circuit Court of Appeal in *Burge v. Parish of St. Tammany* squarely followed *McMillian* precedent and is still applicable today.**

Contrary to Defendant's claims that *Burge v. Parish of St. Tammany*[52] has been overruled, abrogated, or undermined by the Fifth Circuit's en banc decision in *Daves v. Dallas County*,[53] *Burge* followed and properly applied the analysis and framework articulated by the Supreme Court in *McMillian*.

In *Burge*, the plaintiff brought a 42 U.S.C. 1983 claim against the district attorney for the Parish of St. Tammany in his official capacity, alleging that the office's policies led to the suppression of exculpatory evidence in violation of the plaintiff's constitutional rights, leading to his wrongful imprisonment for a crime which he did not commit.[54] The claims made by the *Burge* plaintiff are the same claims brought by Mr. Jones against Defendant herein. The Fifth Circuit found that a suit by a plaintiff for violation of his constitutional rights based on the district attorney's withholding exculpatory evidence was properly brought against the district attorney in his official capacity.[55] Nothing in the law or jurisprudence overturns this ruling.

In addition to attacking *Burge* as overruled (which is denied), Defendant has attacked *Burge* as inapplicable to the instant §1983 suit because the *Burge* analysis allegedly centered around Eleventh Amendment immunity. While true that the Fifth Circuit in *Burge* analyzed whether the St. Tammany District Attorney enjoyed Eleventh Amendment immunity based on whether the district attorney's office was an arm of the state and found that a Louisiana district attorney sued in his official capacity is a local government official, the inquiry did not stop there. The Fifth Circuit then went on to examine whether Burge's official capacity claim against the

---

[52] *Burge*, 187 F. 3d 452 (5th Cir. 1999).
[53] 22 F. 4th 522 (5th Cir. 2022).
[54] *Burge*, 187 F.3d at 462-63.
[55] *Id.* at 470 (emphasis added).

district attorney met the requirements for §1983 liability under *Monell* and *City of Canton v. Harris*,[56] the same claims that have been brought in the instant lawsuit.

Importantly, in conducting its analysis, the Fifth Circuit applied *McMillian*, asking "whether governmental officials are policymakers for the local government in a particular area, or on a particular issue" and analyzing state law in answering that question.[57] Specifically, the court asked two questions:

(1) Whether the District Attorney is the final official source for policies, training, and procedures to assure that all evidence favorable to an accused obtained by the Sheriff's Office is conveyed to the District Attorney and disclosed to the defense when the evidence is material either to guilt or to punishment;[58] and

(2) What entity is liable under § 1983 in an "official capacity" suit for a district attorney's policies that cause constitutional torts related to the failure to disclose material evidence favorable to criminal defendants.[59]

The court observed, pursuant to *McMillian*, that: (1) the district attorney is "virtually an autonomous local government official;"[60] (2) Louisiana state "constitutional and statutory provisions indicate that a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office;"[61] and (3) "the entity liable for the torts of a district attorney's employees under state law is the office of the district attorney as an independent local government entity." The *Burge* court concluded:

Considering the Louisiana constitutional and statutory law and tort cases, we conclude that, **in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity.**[62]

---

[56] *Id.* at 468.
[57] *Id.* at. 468 (citing *McMillian*, 520 U.S. at 785).
[58] *Id.* at 469.
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.* at 470 (emphasis added).

This ruling squarely addresses the issues in the underlying motion and has not been overruled by the Fifth Circuit sitting en banc, contrary to any assertion made by Defendant herein. Nor is the *Burge* analysis irreconcilable with the *Daves* analysis.[63] *Burge* and *Daves* both applied the *McMillian* analysis but reached different conclusions due to differences in the Louisiana's and Texas' constitutions, legislative history, framers' intent, control over the offices, and act at issue as it relates to a state-specific function at issue in those suits, as will be outlined in the next section. Any argument by Defendant to the contrary should be ignored as outright false.[64]

      **C.** ***Daves v. Dallas County*** **is not new precedent, and applying** ***Daves*** **to the facts of the instant suit does not operate to bar Plaintiff's claims.**

Defendant relies heavily on *Daves v. Dallas County*[65] in an attempt to advance his argument that claims brought under 42 U.S.C. 1983 against the Orleans Parish District Attorney in his official capacity are really claims brought against the State of Louisiana, and as such, are subject to dismissal. Defendant's assertion is that OPDA's actions arose in connection to a state function of prosecuting state-law crimes in state court.[66] This argument, likewise, fails.

Under *Daves*, just like under *McMillian*, state law must grant a municipal entity the power to act, at times, as an arm of the state before any of its acts can be attributed to the state.[67] Despite Defendant's claims to the contrary, under Louisiana law and as outlined above, district attorneys are not vested with state power, their acts are never the responsibility of the state, and their actions cannot be controlled by the state. Put simply, they are not arms of the state.

---

[63] R. Doc. 9-1 at p. 22.
[64] Even in the recent decision of *Arnone v. Cnty. Of Dallas Cnty., Texas*, 29 F. 4th 262, 267 (5th Cir. 2022), the Fifth Circuit confirms that the Daves decision "***clarifies*** how to attribute a policymaker's actions under *McMillian*," rather than overrules *McMillian* (emphasis added).
[65] 22 F. 4th 522 (5th Cir. 2022).
[66] *See* R. Doc 9-1 at p. 11.
[67] *Daves*, 22 F. 4th at 533.

In *Daves*, the plaintiffs asserted that their Fourteenth Amendment rights to procedural due process, equal protection, and substantive due process were violated by Dallas County judges as it related to the bail system used in Dallas County.[68] Specifically, the plaintiffs contended that the district court judges in Dallas County promulgated bail schedules for felony and misdemeanor arrestees which subjected indigent arrestees to an unconstitutional "system of wealth-based detention."[69]

In analyzing the level of government for which the county judges were acting when establishing the policy that was relevant to the suit, the *Daves* court, following the *McMillian* analysis,[70] asked two questions: (1) could, at times, county judges in Texas act for the state? and (2) were the county judges acting on behalf of Texas rather than the county when they created the policy at issue? Answering these two questions in the instant matter again supports the conclusion that Defendant is <u>not</u> an arm of the state.

### 1.   Could, at times, county judges in Texas act for the state?

In addressing the first question, the Fifth Circuit considered multiple factors and found that it was possible for county judges, at times, to act on behalf of the state. In examining the Texas Constitution and finding that the Texas Constitution explicitly vested the state's judicial branch power in the defendant-judges,[71] the court determined that it was most relevant that the Texas constitution explicitly gave *state* judicial power to the different courts, including county courts.[72] For the reasons set forth above, the Louisiana Constitution does not impart such power on local

---

[68] *Id*. at 529.
[69] *Id.* at 527–28, 30.
[70] *Id*. at 537.
[71] *Id*.
[72] *Id*.

district attorney's offices. Rather, it provides that a district attorney is a parish official and limits a district attorney's powers to his district.[73]

Further, in finding that Texas county judges could act as arms for the State of Texas at times, the *Daves* court was not presented with any evidence of any historical development of legislative intent to bar the defendants in that matter from acting as arms of the state. In fact, in *Daves*, in exploring the historical development of the Texas statutory county courts, the court concluded that Texas statutory and case law established that the statutory county court was granted "part of the constitutional court's state judicial power" and vested with the state's judicial power at every point in time since the creation of the first county court.[74]

An analysis of the historical development of Louisiana's constitution and the position of municipal prosecutors leads to the opposite conclusion than the one found in *Daves*. As outlined above, under Louisiana law, a Louisiana district attorney, and the Orleans Parish District Attorney in particular, never acts as an arm of the state: The Louisiana Constitution designates Louisiana district attorneys as local parish officers and does not vest state wide judicial powers in Louisiana district attorneys; the State of Louisiana is not liable for any acts of Louisiana district attorneys; the State of Louisiana cannot exercise control over the operations and policies of OPDA; the State of Louisiana cannot remove a Louisiana district attorney from office; and *Burge* and *Hudson*, which have never been overruled, have both held that Louisiana district attorneys act for the municipality, not the state.

Thus, Louisiana law directs that Louisiana district attorneys may not ever be considered to act as an arm of the state, and the inquiry should end here. However, even if the answer to the

---

[73] La. Const. art. 6 §§ 5, 7; art. 5 § 26.
[74] *Daves*, 22 F. 4th at 538.

question posed by this first prong as it relates to Louisiana district attorneys was "yes" (which Plaintiff denies), *Daves* requires the second question to be answered, outlined below.

### 2. Were county judges acting on behalf of Texas rather than the county when they created the bail policy at issue?

As it relates to the second question asked by the court in *Daves*, the Fifth Circuit examined whether the judge's creation of the bail schedule executed a state function under Texas law.[75] In finding it did, the *Daves* court reasoned that "[a] judge's setting an arrestee's bail…is a part of the state adversary proceedings"[76] and that "bail is a right granted by the [Texas] state constitution…and the process for determining bail is controlled by state statutes."[77]

In ultimately finding that the county judges were acting on behalf of the state when setting bail, the Fifth Circuit reasoned that the act performed by the county judges – setting bail – was itself the execution of the state-specific function of setting bail.[78] In other words, the court found that the specific function of setting bail was an enumerated state function under Texas law, was derived from the Texas Constitution, and was controlled by Texas statutes. But *Daves* did not discuss § 1983 liability or acts stemming from local office policies that have little connection to a state function, as we have here.

The question we must ask for purposes of the instant lawsuit is: in creating the suppression policies at issue in this case, was the Orleans Parish District Attorney executing a state function that the state vested power in him to execute and over which state law has explicit purview? The answer is no. OPDA's office policy of non-disclosure of favorable material evidence <u>does not execute any state function</u>, but rather governs OPDA's actions relative to its <u>federal</u> constitutional

---

[75] *Id*. at 538-39.
[76] *Id*. at 539.
[77] *Id*. at 540.
[78] *Id*.

obligations to those charged with a crime pursuant to *Brady v. Maryland, supra*. Specifically, disclosure of exculpatory evidence in criminal cases is not a right created by or addressed within the Louisiana Constitution. Rather, it is *Brady* and the United States Constitution that binds all prosecutors regardless of jurisdiction and applies in every criminal case in the United States. Thus, evidentiary disclosure policies of any prosecutor's office are derived from *Brady* obligations shared by all prosecutors per the federal Constitution of the United States, not from Louisiana state law or any state law obligation or interest over which Louisiana has exclusive purview. Put simply, the suppression of favorable evidence is not a state function, and it is not claimed to be so in the analysis conducted by Defendant in his tables. Nor is the function of the suppression of favorable evidence claimed to parallel the function of the setting of bail found at issue in *Daves* or the function of state probation revocation found at issue in *Arnone* (addressed in the next section), cases on which Defendant so heavily relies.

For the foregoing reasons, the New Orleans District Attorney was not acting on behalf of the State of Louisiana when implementing a policy which resulted in suppression of favorable material evidence and a violation of Plaintiff's constitutional rights.

**D. *Arnone v. County of Dallas County, Texas* is not new precedent, and applying *Arnone* to the facts of the instant suit does not operate to bar Plaintiff's claims.**

Likewise, Defendant cites *Arnone v. Cnty. Of Dallas Cnty., Texas*,[79] a Fifth Circuit decision which followed *McMillian* and *Daves*, in support of its claim that OPDA was acting as an arm of the state when withholding, as part of local inter-office policy, favorable material evidence. As before, this argument fails.

---

[79] 29 F. 4th 262.

In *Arnone*, the plaintiff, an alleged sex-offender, plead guilty and was placed on community supervision.[80] While on community supervision, the plaintiff failed two polygraph tests.[81] As a result, the district attorney revoked the plaintiff's community supervision and proceeded to adjudication, where the plaintiff was convicted and sentenced to prison.[82] Over a decade later, the plaintiff was ordered released because polygraph test results were ruled inadmissible under Texas evidence law.[83] Suit against the Texas district attorney followed.[84]

In ruling on the motion to dismiss for failure to state a claim, just as in *Daves*, the *Arnone* court asked: (1) whether Texas law had vested state power in a municipal defendant – the Dallas County District Attorney – to perform specific state functions at times; and (2) whether the Dallas County District Attorney's policy of requiring sex offenders who were released on community supervision to pass regular polygraph tests was executing a state function under Texas law. In answering these questions, the court found that:

> [D]istrict attorneys act for the state when they decide to seek revocation of probation or deferred adjudication. A policy governing when to exercise that power in the future—whether because of a polygraph result, or not—is *inextricably linked to that use of state power*, just like it was in *Daves*."[85]

In other words, the court determined that the Dallas County District Attorney was not liable under § 1983 because the District Attorney performed a function exclusively within the purview of the state – that is, the specific function of determining whether to pursue state probation revocation.[86] The following findings were pertinent to the court reaching this conclusion that Texas district

---

[80] *Id*. at 264.
[81] *Id*.
[82] *Id*.
[83] *Id*.
[84] *Id*.
[85] *Id*. at 269-70 (emphasis added).
[86] *Id*.

attorneys acted as state, not county, policymakers specifically when promulgating or acquiescing to the polygraph policy.[87]

First, the Texas Constitution provides the state of Texas – through the legislature – with a direct role in regulating both the scope of prosecutorial duties and compensation for district attorneys.[88] Secondly, Texas case law provides that "district attorneys aren't just empowered *by* the state. They *are* the state, complete with designation as "officers of the judicial branch of government."[89] Third, The Texas Code of Criminal Procedure provides that district attorneys represent the State in criminal cases.[90] Finally, it was determined that Texas district attorneys draw their power to seek probation revocation from the state.[91]

Unlike the Texas constitution, which provides the state of Texas with a direct role in regulating both the scope of prosecutorial duties and compensation for district attorneys, in Louisiana, **the municipality of New Orleans, not the State of Louisiana, exerts control over the New Orleans District Attorney**. Unlike Texas law which provides that district attorneys are officers of the judicial branch of government and represent the state in criminal cases, **the Louisiana Constitution does not designate Louisiana district attorneys as officers of the judicial branch of government**.[92] Unlike Texas laws which have not excluded the actions of their district attorneys from those actions which are legally attributable to the state, **Louisiana tort law explicitly states that district attorneys' acts are not attributable to the State of Louisiana**.

These key differences lead to the opposite conclusion as that reached in *Arnone*. *Arnone's* holding that the initiation of a Texas state law probation revocation constitutes a state function

---

[87] *Id*. at 268.
[88] *Id*. at 268.
[89] *Id*. at 269, *citing Saldano v. Texas*, 70 S.W.3d 873, 878 (Tex. Crim. App. 2002).
[90] *Id*. at 269.
[91] *Id*. at 269.
[92] La. Const. art. 5 § 1.

under state law is only applicable to that Texas-specific and function-specific scenario with no bearing on this case. For these reasons, Defendant herein was not acting as an arm of the state of Louisiana or executing a state function over which Louisiana has exclusive purview in creating and allowing the suppression policies at issue in this case.

   **E.  Just like *Burge*, *Hudson v. City of New Orleans* was not overruled by *Daves v. Dallas County* or *Arnone v. County of Dallas*.**

Defendant also attempts to categorize *Hudson v. City of New Orleans*[93] as irrelevant due to *Hudson's* discussion of OPDA's immunity under the Eleventh Amendment. While true that *Hudson's* analysis was in the content of Eleventh Amendment immunity, which centers around whether an individual is an arm of the state generally for constitutional purposes (as opposed to whether an individual is a local policymaker in a particular area/ on a particular issue for statutory purposes under a § 1983 claim),[94] its findings as to how district attorneys are treated under Louisiana law are consistent with other jurisprudence on the issue, in line with the wording of Louisiana's Constitution and statutes, and apply to this Defendant in this lawsuit. In *Daves*, the court acknowledges as much, stating that the two matters are "related"[95] and "undeniably intertwined."[96]

In fact, several of the factors which the Fifth Circuit in *Hudson* considered in deciding if a governmental body acts for the state in the Eleventh Amendment immunity context mirror or overlap the *McMillian* factors considered in the § 1983 context. Also, the findings have been undisturbed and can apply to the *McMillian* analysis. For example, the *Hudson* court's observation that "the Louisiana legislature has treated district attorneys more like representatives of the state's

---

[93] 174 F. 3d 677.
[94] *Daves*, 22 F. 4th at 555 (Haynes, J., dissenting) (internal quotations omitted), citing *McMillian*, 520 U.S. at 785.
[95] *Id*. at 532.
[96] *Id*. at 555 (Haynes, J., dissenting).

political subdivisions than of the state itself,"[97] and reliance on the opinion of the Attorney General which "concluded that district attorneys and their employees are considered employees of their respective parishes despite the fact that they exercise constitutional and statutory authority"[98] are considerations that can be relied upon pursuant to a *McMillian* analysis.

### F. The district courts' findings in *Smith v. Williams* and *Floyd v. Dillmann* apply a correct analysis of applicable law.

Finally, Defendant attempts to criticize the recent Eastern District of Louisiana holdings in *Smith v. Williams*[99] and *Floyd v. Dillman*.[100] In both of these cases, Defendant filed the same or nearly identical motions to dismiss for failure to state a claim, which were denied by Judge Brown and Judge Milazzo, respectively. For the reasons that follow, the rulings of Judge Brown and Judge Milazzo are proper and should be followed by this Honorable Court.

#### 1. *Smith v. Williams*

Defendant makes several attacks on the *Smith* ruling which Plaintiff will attempt to synthesize. First, Defendant asserts that the *Smith* court erroneously concluded that *Burge* was controlling and that the analysis used by the *Smith* court was contrary to *Daves*. Put very simply, and for the reasons outlined above, this is not true. *Daves* and *Burge* both apply the *McMillian* factors, but different conclusions are reached due to the differences in Texas and Louisiana's constitutions, legislative history, laws, and the acts at issue as it relates to a state-specific function at issue in those suits.

Next, Defendant contends that the *Smith* court erred in considering Louisiana's legislative history surrounding vicarious liability upon the state for acts of its employees and the removal of

---

[97] *Hudson*, 174 F. 3d at 683.
[98] *Id*. at 686.
[99] No. CV 22-1550, 2023 WL 2263841, at *9 (E.D. La. Feb. 28, 2023).
[100] No. CV 19-8769, 2023 WL 2375362, at *1 (E.D. La. Mar. 6, 2023).

district attorneys from inclusion of the statutes because "the intent and effect of this legislation…was to limit the monetary liability of the State of Louisiana."[101] The case cited by Defendant in support of this conclusion, *Rhodes v. State through the Department of Transportation and Development*,[102] a case which has since been vacated, discussed the legislative purpose behind the enactment of  La. R.S. 9:2800 specifically, which statute pertains to the limitation of liability for public bodies as it relates to buildings and things within the care and custody of the given public body. La. R.S. 9:2800 was not discussed by the *Smith* court, and there is no merit to Defendant's position that the only purpose behind the enactment of the statutes cited by Judge Brown were to relieve the financial burden on the state. Even if this were true, this reasoning does not preclude from consideration the fact that district attorneys are not statutorily considered to be arms of the state.

Third, Defendant alleges that "the fact that state law does not make the state vicariously liable for the actions of district attorneys does not mean that district attorneys never act on behalf of the state or exercise power of the state,"[103] and asserts that the *Smith* court improperly made an "all or nothing" determination as to whether Louisiana district attorneys act on behalf of the state. Plaintiff submits that the "all or nothing" finding was proper, as outlined above. But even if this finding was in error and this Court determines that district attorneys can, at times, act as an arm of the state, the final conclusion here does not change and Judge Brown's ruling remains correct because the specific function of suppression of evidence was not a function of the state or a power granted to the district attorney by the state, as previously briefed.

---

[101] R. Doc. 9-1 at p. 25.
[102] 656 So. 2d 650, 655 (La. App. 1 Cir. 5/5/95), *as corrected on reh'g* (June 21, 1995), *writ granted*, 665 So. 2d 1173 (La. 1/3/96), and *vacated*, 674 So. 2d 239 (La. 5/21/96).
[103] R. Doc. 9-1 at p. 25.

Defendant then criticizes the *Smith* court for "only" citing one case following its statement that "several intermediate appellate courts have found that the Louisiana Legislature's amendments to the indemnity and limitation of liability statutes evidence a strong legislative intent to designate Louisiana district attorneys as local officers that do not act for the State on the particular issue of their evidence disclosure policies and practices."[104] Namely, Defendant avers that the cited case, *Obermier v. State*,[105] did not discuss legislative amendments to the indemnity and limitation-of-liability statutes, did not address the question of whether a district attorney acts on behalf of the state, and did not concern evidence disclosure policies and practices. While true, there is a plethora of other case law as well as statutory law which was cited both by the *Smith* court and herein which solidifies that the Louisiana legislature's intent has been to designate Louisiana district attorneys as local officers that do not act for the State on the issue of their evidence disclosure policies and practices.

Next, Defendant asserts that the *Smith* court ignored the fact that Texas district attorneys are described in Texas jurisprudence as local officials rather than state officials and yet the *Arnone* court found that Texas district attorneys act for the state when the decide to seek revocation of probation, despite this jurisprudential classification. This argument is meaningless, as Louisiana jurisprudence has consistently classified Louisiana district attorneys as local officials. Moreover, this argument is an oversimplification of the *Arnone* analysis. As briefed, *supra*, the function at issue in Arnone – probation revocation – stemmed from a state specific function of determining whether to pursue state probation revocation. In this case, there is no state specific function involved.

---

[104] *Smith*, 2023 WL 2263841, at *9.
[105] 606 So. 2d 937 (La. App. 3 Cir. 1992).

Finally, Defendant argues that the *Smith* court relied on 1980s legislation that fails to support the trial court's conclusion that "a Louisiana district attorney acts as an autonomous local government official in the exercise of his evidence disclosure duties."[106] This assertion completely ignores that Judge Brown, in making this statement, used the exact language found *Burge*, which is still relevant law and has never been overruled.

For the foregoing reasons, Defendant's attacks on *Smith* are without merit, and the trial court was correct in its ruling.

### 2.  *Floyd v. Dillman*

Defendant makes three primary attacks on the *Floyd* ruling. First, Defendant asserts that it was error for the *Floyd* court to rely on *Burge* and make "no attempt to defend the correctness of the *Burge* decision or explain how the same result could be reached considering the factors relied on in *Daves*."[107] This argument does not foreclose the fact that the ruling of the trial court was correct based on the same analysis presented by Plaintiff above.

Secondly, Defendant alleges that the *Floyd* court incorrectly determined that *Daves* did not create a new analysis and criticizes the *Floyd* court for acknowledging that that the analysis in *Dave* differed from that in *Burge*, yet still applied *Burge* over *Daves*. This argument entirely ignores that the functions at issue in *Daves* and *Floyd/Burge* were wholly different, a fact which was recognized by Judge Milazzo, who correctly noted that the Texas policymakers in *Daves* were "**performing different functions than are at issue here.**"[108] This is the critical distinction between the *Daves* outcome and the *Burge* outcome, as well. The trial court did not err in finding

---

[106] *Smith*, 2023 WL 2263841, at *9.
[107] R. Doc. 9-1 at pp. 21-22.
[108] *Floyd*, 2023 WL 2375362, at *4 (emphasis added).

that *Daves* did not create a new analysis. As previously briefed, both *Daves* and *Burge* properly applied the *McMillian* factors.

Third, Defendant criticizes the *Floyd* court's reliance on *Kimble v. Jefferson Parish Sheriff's Office*,[109] a recent decision from the Fifth Circuit which, according to the trial court, relied on *Burge* to reach the conclusion that a district attorney acted as an arm of the parish for purposes of a § 1983 claim.[110] Defendant contends that *Kimble* did not analyze which governmental entity a Louisiana prosecutor acts on behalf of in prosecuting crimes against the state. While true that *Kimble* did not conduct this analysis, the Fifth Circuit panel in *Kimble* did acknowledge and follow *Burge* in determining that the Jefferson Parish assistant district attorney who was sued in her official capacity was acting as an arm of the local governmental entity she represented – in that case, the parish.[111] Ultimately, the Fifth Circuit determined that a proper claim was not stated against the assistant district attorney since she was not alleged to be the final policymaker for the parish or district attorney's office.[112] This finding in no way contradicts *Burge*, and while it does not explicitly affirm *Burge*, it does give credence to the relevance and current applicability of *Burge*. Further, *Kimble* also cited the Supreme Court of the United States case of *Connick v. Thompson*[113] in acknowledging that a § 1983 lawsuit can be brought against a district attorney in his official capacity for municipal liability,[114] another case which further supports that the district attorney is the proper party to sue for *Brady* violations resulting in constitutional deprivations.

Defendant avers that *Kimble* is "at odds" with prior jurisprudence, claiming that *Kimble* means if the alleged policies are attributable to the parish, rather than the district attorney's office,

[109] No. 22-30078, 2023 WL 1793876 (5th Cir. Feb. 7, 2023).
[110] *Floyd*, 2023 WL 2375362, at *4.
[111] *Kimble*, 2023 WL 1793876, at *3.
[112] *Id.*
[113] *Connick v. Thompson*, 563 U.S. 51 (2011).
[114] *Kimble*, 2023 WL 1793876, at *3.

then the parish is the proper party to sue, not the district attorney's office.[115] This argument, which is made without any citations to any law, completely misstates *Kimble*, which never reasoned that the parish was the proper party to sue, but only reasoned that the assistant district attorney in her official capacity was acting as an arm of the parish, i.e., the municipality.[116]

For the foregoing reasons, Defendant's attacks on *Floyd* are without merit, and the trial court was correct in its ruling.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff, CHRISTOPHER JONES, respectfully prays that Defendant's Motion to Dismiss for Failure to State a Claim be denied. In the alternative, Plaintiff prays that he be allowed an opportunity to amend his Complaint to correct any deficiencies.

Respectfully submitted,

SCOTT VICKNAIR, LLC

*/s/ Hope E. Hughes*_____
DAVID P. VICKNAIR, #34135
CAITLIN B. CARRIGAN, #33754
HOPE E. HUGHES, #35833
909 Poydras Street, Suite 2025
New Orleans, LA 70112
(504) 500-1111 (Telephone)
(504) 226-2339 (Facsimile)
david@svlaw.law
caitlin@svlaw.law
hughes@svlaw.law

***Attorneys For Plaintiff, Christopher Jones***

---

[115] R. Doc. 9-1 at p. 23.
[116] *Id*. at *3.

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2023, all parties of record in the above captioned matter were served with the foregoing pleading by the Court's CM/ECF system.

_/s/ Hope E. Hughes_
HOPE E. HUGHES