UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER JONES | CIVIL ACTION |
| VERSUS | NO. 22-5097 |
| JASON WILLIAMS, *et al.* | SECTION M (1) |

## ORDER & REASONS

Before the Court is a motion to dismiss filed by defendant Jason Williams, in his official capacity as Orleans Parish District Attorney.[1] Plaintiff Christopher Jones opposes the motion,[2] and Williams replies in further support of it.[3] Having considered the parties' memoranda, the record, and applicable law, the Court issues this Order & Reasons denying the motion.

## I. BACKGROUND

In October 1999, the Orleans Parish District Attorney's Office ("OPDA") charged Jones with seven counts of armed robbery following three robbery incidents in New Orleans that allegedly all took place within seven minutes on the night of August 10, 1999.[4] Central to the OPDA's theory of the case was Jones's ability to commit the sequence of robberies – which occurred in different locations – within "a matter of minutes."[5] Unbeknownst to Jones at the time of his prosecution, however, OPDA possessed exculpatory evidence – particularly, a statement made by one of the victims that "he had seen Jones 'for like ten minutes' before the final incident," which would tend to make Jones's "presence at the other two incidents impossible."[6] This

---

[1] R. Doc. 9.
[2] R. Doc. 14.
[3] R. Doc. 17.
[4] R. Doc. 1 at 1, 5.
[5] *Id.* at 2.
[6] *Id.*

information was never produced or disclosed to Jones's counsel.[7] Following trial, Jones was found guilty of four of the six counts ultimately tried and was subsequently sentenced to a 228-year term of imprisonment.[8] His incarceration began on May 14, 2001.[9]

After exhausting the appeals process, Jones sought relief from the federal courts by filing a habeas corpus petition in 2008.[10] That proceeding, which was before another section of this court, resulted in the court ordering the OPDA to disclose those portions of Jones's file that contained exculpatory evidence, whereupon evidence of the potentially exonerating statement made by one of the victims was discovered.[11] It was not until 2021 that OPDA acknowledged that its withholding of exculpatory evidence in Jones's case constituted a *Brady*[12] violation.[13] In recognition of this, the OPDA vacated Jones's convictions.[14] He was released on December 9, 2021.[15] As a result of the wrongfully procured convictions, Jones was imprisoned for over 22 years.[16]

After his release, Jones filed a municipal liability claim (a *Monell* claim[17]) against Williams, in his official capacity as Orleans Parish District Attorney, in which he seeks damages for the OPDA's deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983.[18] Jones alleges that the OPDA (1) violated his constitutional rights by withholding exculpatory evidence and engaging in prosecutorial misconduct during his trial, (2) perpetuated an unconstitutional

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at 10.
[10] *Id.* at 2.
[11] *Id.*
[12] *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring prosecutors to disclose to the defense any material, exculpatory information in the government's possession).
[13] R. Doc. 14 at 2.
[14] R. Doc. 1 at 11.
[15] R. Doc. 1 at 3, 11.
[16] *Id.* at 3.
[17] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[18] He also brings a direct-action claim, pursuant to La. R.S. 22:1269, against the unnamed insurers of Williams and the OPDA. R. Doc. 1 at 20-21.

policy regarding prosecutors' duty to disclose favorable information to defendants, and (3) failed to adequately train, supervise, and discipline prosecutors with respect to compliance with *Brady*.[19]

**II.    PENDING MOTION**

Williams argues that a district attorney in Louisiana acts as a representative of the state when making decisions regarding the disclosure of exculpatory evidence to defendants. Therefore, says Williams, such actions are "attributable to the State of Louisiana," as opposed to another political subdivision, such as a parish, city, or district attorney's office.[20] As such, only the State of Louisiana can be liable for Jones's complained-of conduct, and any claim against Williams should be dismissed.[21] Williams asserts that the Fifth Circuit's recent *en banc* decision in *Daves v. Dallas County*, 22 F.4th 522 (5th Cir. 2022), makes clear that, for purposes of a *Monell* claim pursuant to 42 U.S.C. § 1983, the state – as opposed to a local district attorney's office as an independent local government entity – is the applicable level of government for which a district attorney acts when making decisions about criminal prosecutions (including policies and decisions concerning the disclosure of *Brady* material).[22] Williams then concludes that, because district attorneys in Louisiana are acting on behalf of the state when making such policies and decisions, he is not the proper party defendant to this action.

In opposition, Jones argues that *Daves* did nothing to disturb binding Fifth Circuit precedent establishing that, under Louisiana law, district attorneys act as an independent governmental entity – and not for the state – when making decisions regarding the disclosure of exculpatory evidence to criminal defendants.[23] Further, Jones urges that *Daves* is inapposite to the

---

[19] R. Doc. 1 at 11-19.
[20] R. Doc. 9-1 at 3.
[21] *Id.*
[22] *Id.* at 5-14.
[23] R. Doc. 14 at 14-16.

3

analysis because the rule announced in that decision was made pursuant to Texas, not Louisiana, law, and Supreme Court precedent requires that the determination of the responsible level of government for a *Monell* claim be made through an examination of the relevant state's law.[24] Therefore, says Jones, the motion to dismiss should be denied.

In reply to Jones's opposition, Williams maintains that district attorneys in Louisiana act on behalf of the state and exercise state power when making decisions related to *Brady* evidence.[25] Moreover, argues Williams, the text and structure of the Louisiana constitution, as well as state jurisprudence, demonstrate that district attorneys are state officials.[26]  Alternatively, in the event the Court denies his motion to dismiss, Williams requests that the Court certify its order for an immediate appeal.[27]

### III.   LAW & ANALYSIS

Section 1983 "allows suits against any 'person' for violation of federal rights." *Daves*, 22 F.4th at 532 (quoting 42 U.S.C. § 1983).  "Municipalities, which include counties and certain other local governmental bodies, are 'persons' under Section 1983." *Id.* (citing *Monell*, 436 U.S. at 690 & n.54).  However, "[s]tates and their officials are not persons" for purposes of the statute.  *Id.* "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).  Under a municipal liability theory, "[s]uit may properly be brought against 'those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning

---

[24] *Id.* at 20-29.
[25] R. Doc. 17 at 3-5.
[26] *Id.* at 5-9.
[27] *Id.* at 12-13.

the action alleged to have caused the particular constitutional or statutory violation at issue.'"[28] *Daves*, 22 F.4th at 532 (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). But the governmental entity, not the named official, is the real party in interest in an official-capacity suit. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

"Section 1983 litigation requires [courts] to identify the level of government for which an official was acting when establishing the policy that is relevant to the claims" to determine the entity to which the alleged harm can be attributed. *Daves*, 22 F.4th at 533. It has been acknowledged, however, that this determination can be difficult, as "sometimes a policymaker wears more than one hat," where he or she may be acting for the state with respect to one official action but acting for a local governmental entity with respect to another official action. *Arnone v. Dall. Cnty.*, 29 F.4th 262, 266 (5th Cir. 2022) (recognizing those scenarios where "an official sometimes acts for the county, and sometimes acts for another governmental entity, like the state").

The Supreme Court's decision in *McMillian v. Monroe County* instructs courts "to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue," with the "inquiry [being] *dependent* on an analysis of state law." 520 U.S. 781, 784 (1997) (emphasis added).[29] Stated differently, *McMillian* declares that "[f]or purposes of Section 1983 personhood, it is state law that determines whether an official with final policymaking authority as to the specific function involved in the litigation is acting for a local governmental unit or the state." *Daves*, 22 F.4th at 533. The *McMillian* Court, however, did not answer the precise question presented here – namely, does a Louisiana district attorney

---

[28] Neither party contests Williams's status as the final, official policymaker for purposes of a municipal liability claim under § 1983. Instead, the contest is over whether he was acting for the state or a local governmental entity.
[29] The parties do not dispute whether *McMillian* is the proper starting place for the analysis. They diverge, however, on whether the application of *McMillian* leads to the conclusion that a district attorney in Louisiana acts on behalf of the state or a local entity when making decisions regarding the disclosure of exculpatory evidence.

5

functionally act for the state or for a local governmental entity when making policy and decisions regarding the disclosure of exculpatory evidence. But the Fifth Circuit, applying *McMillian*, did. In *Burge v. Parish of St. Tammany,* the court stated:

> Considering the Louisiana constitutional and statutory law and tort cases, we conclude that, in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes *liability on the district attorney's office as an independent local entity*.

187 F.3d 452, 470 (5th Cir. 1999) (emphasis added). Thus, *Burge* necessitates the conclusion that a district attorney in Louisiana acts on behalf of the district attorney's office when making decisions regarding the disclosure of exculpatory evidence – not the state. *See id.* ("For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities.").

Notwithstanding this, Williams disputes whether *Burge* directly answered this very question, and, in any event, maintains that subsequent Fifth Circuit decisions make clear that district attorneys represent the state when making *Brady* decisions.[30] But the two Fifth Circuit decisions cited by Williams do not undermine the rule announced in *Burge*. The first decision, *Daves*, involved state-court judges in Texas, and so the court properly considered – by conducting a thorough analysis of Texas law pursuant to *McMillian* – whether those judges represent the State of Texas when making decisions regarding bail schedules. 22 F.4th at 534-41. In the second decision, *Arnone v. Dallas County*, the Fifth Circuit – also by analyzing Texas law pursuant to *McMillian* – considered whether Texas district attorneys act for the state when implementing a polygraph test policy in the administration of sex offender treatment programs. 29 F.4th at 265, 270. While in both cases the Fifth Circuit held that the applicable policymaker acted on behalf of

---

[30] R. Doc. 9-1 at 3-7.

the State of Texas with respect to the specific official action at issue, neither holding can be said to abrogate the Fifth Circuit's decision in *Burge*, which concluded, applying *McMillian* to analyze *Louisiana* law, that district attorneys act on behalf of "the district attorney's office as an independent local entity" when making policy and decisions concerning the disclosure of *Brady* material. 187 F.3d at 470.

Three other sections of this court – in materially indistinguishable cases – have likewise rejected Williams's argument that *Daves* and *Arnone* control the analysis for these *Monell* claims to require the conclusion that district attorneys act on behalf of the state when making policy and decisions about the disclosure of *Brady* material. *See Smith v. Williams*, 2023 WL 2263841, at *10 (E.D. La. Feb. 28, 2023); *Floyd v. Dillmann*, 2023 WL 2375362, at *4 (E.D. La. Mar. 6, 2023); *Reeder v. Williams*, 2023 WL 2771481, at *3 (E.D. La. Apr. 4, 2023). The Court finds these decisions to be thoughtful, well-reasoned, and correct in their application of the binding precedent of *Burge*.[31]  And, even if the Fifth Circuit ultimately decides to revisit its holding in *Burge*, this Court is without the authority to preempt that prerogative. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021) (observing that "[t]he district court was not free to overturn" binding Fifth Circuit precedent, notwithstanding an intervening change in the law effected by post-precedent Supreme Court decisions).[32]  Therefore, this Court applies the Fifth Circuit's binding precedent in *Burge* to conclude that Williams's motion to dismiss should be denied.[33]

---

[31] The Court notes that in a recent, unpublished decision of the Fifth Circuit, the panel cited with approval the decision in *Burge* for the proposition that, "'[f]or purposes of "official capacity" suits under § 1983, the district attorney's office resembles other local government entities.'" *Kimble v. Jefferson Par. Sheriff's Off.*, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023) (quoting *Burge*, 187 F.3d at 470).

[32] Indeed, a subsequent panel of the Fifth Circuit can overturn a prior panel's precedent only after certain, prescribed conditions have been satisfied. *See In re Bonvillian*, 19 F.4th at 792.

[33] Additionally, the Court denies Williams's alternative request for certification of this Order & Reasons for immediate appeal, as nothing in *Daves* and *Arnone* indicates that "there is a substantial ground for difference of opinion" on to the rule announced in *Burge*. 28 U.S.C. § 1292(b).

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, Williams's motion to dismiss (R. Doc. 9) is DENIED.

New Orleans, Louisiana, this 2nd day of May, 2023.

                                                  _____
                                                  BARRY W. ASHE
                                                  UNITED STATES DISTRICT JUDGE